UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHELLE BAILEY and MICHAEL JETT, individually and on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>v.<br><br>ADVANCEPIERRE FOODS, INC., TYSON FRESH MEATS, INC., AND TYSON FOODS INC.,<br><br>        Defendant. | Case No. 1:23-CV-01537<br><br>**Judge Franklin U. Valderrama**<br><br>**Magistrate Beth W. Jantz** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Michelle Bailey and Michael Jett ("**Plaintiffs**"), by and through their counsel, respectfully submit this Response in Opposition to Defendants' Tyson Fresh Meats, Inc. ("**Tyson Fresh Meats**"), AdvancePierre Foods, Inc. ("**AdvancePierre**"), and Tyson Foods, Inc. ("**Tyson Foods**" and collectively either "**Tyson**" or "**Defendants**") Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("**Motion**").

**I. INTRODUCTION**

Plaintiffs' First Amended Class Action Complaint ("**FAC**", Dkt. No. 24) states plausible claims that Defendants violated the rights of Plaintiffs and numerous other Illinois residents by improperly requesting their genetic information during a preemployment physical. Tyson asks the Court to dismiss Plaintiffs' claims, arguing that the Court should create new requirements to assert a claim for violation of the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq*. ("**GIPA**"). Such requirements find no support in GIPA's text and history and should be rejected.

1

In relevant part, GIPA states that a company that employs Illinois residents "shall not directly or indirectly … solicit, request, require or purchase genetic testing or genetic information of a person … as a condition of employment, [or] preemployment application[.]" 410 ILCS 513/25(c)(1). The act defines "genetic information" to include family medical history. Thus, to sufficiently plead a GIPA violation, a plaintiff need only allege that there was a request for his or her family medical history and that the request was a condition of employment or application for employment. Defendants concede that the FAC alleges Tyson required preemployment physicals "as part of [Plaintiffs'] onboarding processes" during which Tyson asked Plaintiffs to provide their family medical history "including [about] cardiac health and cancer." Motion, p. 3 (citing FAC, ¶¶ 35-38, 46-48, 55). Accordingly, there is no dispute that Plaintiffs sufficiently pleaded the facts necessary to establish a claim under the text of GIPA.

Unable to argue that Plaintiff fails to meet the textual requirements for a GIPA claim, Defendants attempt to argue that the Court should add additional requirements that the Legislature never imposed, including that Plaintiff show discrimination, misuse of the genetic information and an adverse employment action. These new requirements are predicated upon a fundamental misunderstanding of the statute. In enacting GIPA, the Legislature sought to reassure members of the public that they could obtain genetic testing without fear that the results could later be used against them. That is why GIPA prohibits companies from even requesting such information, because the Legislature concluded that such requests alone could deter people from obtaining genetic testing. To be sure, the statute also prohibits discrimination, misuse, and adverse employment actions, but those are prohibited separately, and **any** violation of conduct prohibited by GIPA creates a private right of action. Thus, unlawful requests, discrimination, misuse, and

adverse employment actions are all prohibited by GIPA, but there is no requirement that all four be present to create a claim; an unlawful request alone is sufficient in and of itself.

Thus, the Court should deny Defendants' Motion and permit Plaintiffs and the putative class to pursue their claims based on Defendants' unlawful requests for genetic information.

## II. NEITHER GIPA'S TEXT NOR LEGISLATIVE HISTORY SUPPORTS DEFENDANTS' ARGUMENTS

Perhaps recognizing that the allegations in the FAC satisfy the requirements in the text of the GIPA statute, Defendants' Motion attempts to artificially raise the bar by suggesting several new atextual requirements for a GIPA violation. These new requirements include that Plaintiffs must allege "discrimination," "misuse" of genetic information, and an "adverse employment action," in addition to an unlawful request. *See* Motion, p. 2. This is a classic strawman argument, devoid of statutory or caselaw support. Nothing in GIPA requires a plaintiff to show any of Defendants' proposed additions in order to state a claim for an unlawful request. Defendants do not, and cannot, point to any law supporting their interpretation. Their cherry-picked references to statements in GIPA's legislative history misrepresent the Legislature's intent behind the statute, which was to encourage the public to embrace genetic testing by eliminating any perception that any information gleaned from those tests could later be used against them.

### A. GIPA Does Not Require Discrimination, Misuse, or an Adverse Employment Action as an Element of a Claim for Improper Request of Genetic Information

Defendants ask the Court to ignore the text of GIPA in an attempt to avoid liability. Despite these efforts, black letter principals of statutory interpretation establish that neither discrimination, nor misuse, nor an adverse employment action is required to allege a GIPA violation.

Under Illinois law, "[w]hen construing a statute, the primary objective is to ascertain and give effect to the legislature's intent, best indicated by the plain and ordinary language of the

statute." *Skaperdas v. Country Cas. Ins. Co.*, 2015 IL 117021, ¶ 15. "In interpreting a statute, no part should be rendered meaningless.… Courts may not depart from the plain language of a statute by reading into it exceptions, conditions, or limitations that the legislature did not express." *Id*.

Section 25 of GIPA sets out directions regarding what employers can and cannot do with regard to genetic information. These include that "[a]n employer, … shall treat genetic testing and genetic information in such a manner that is consistent with the requirements of federal law" and "may release genetic testing information only in accordance with this Act." 410 ILCS 513/25(a), (b). GIPA also states: "[a]n employer, … shall not directly or indirectly do any of the following:

> (1) solicit, request, require or purchase genetic testing or genetic information … as a condition of employment, [or] preemployment application…;
> (2) affect the terms, conditions, or privileges of employment, preemployment application, … , or terminate the employment… of any person because of genetic testing or genetic information …;
> (3) limit, segregate, or classify employees in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee … because of genetic testing or genetic information…; and
> (4) retaliate through discharge or in any other manner against any person alleging a violation of this Act[.]" 410 ILCS 513/25(c).

The Legislature created a broad individual right of action to enforce GIPA, using the same language that it used in the Biometric Information Privacy Act ("**BIPA**"). *Compare* 740 ILCS 14/20(a) *with* 410 ILCS 513/40(a). Thereunder, "[a]ny person aggrieved by a violation of this Act" can seek liquidated damages. *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 29 (holding that the same language used in BIPA granted a similarly broad private right of action, regardless of whether the person sustained actual pecuniary damages).

As Defendants acknowledge, "Plaintiffs premise their claims exclusively on Section 25(c)(1) of GIPA …" Motion, p. 7. Nothing in sub-section (c)(1) suggests that a plaintiff must show either discrimination, misuse, or an adverse employment action to state a claim. All that the

4

sub-section requires is that the employer cannot "solicit" or "request" "genetic information as a condition of employment, [or] preemployment application[,]". As such, any company that makes such a solicitation or request violates GIPA. To be clear, Section 25 does prohibit discrimination, misuse, or an adverse employment actions, but in different sub-sections. A complete reading of Section 25 shows that sub-section (c)(3) addresses discrimination, sub-sections (a) and (b) (among others) address misuse, and sub-sections (c)(2) and (c)(4) address adverse employment actions. Nothing in either Section 25 or Section 40 of GIPA suggests that a plaintiff must show a violation of sub-sections (c)(2) through (c)(4) to establish a claim under sub-section (c)(1). Therefore, Defendants' proposal to require discrimination, misuse, and an adverse employment actions to state any GIPA claim would render sub-section (c)(1) meaningless.

### B. Analogous Case Law Confirms an Unlawful Request Claim Does Not Require Allegations of Discrimination, Misuse, or an Adverse Employment Action

Finding no support in GIPA's text, Defendants try to rely on caselaw. Plaintiff's claim under Section 25(c)(1) is a matter of first impression; as such, Defendants look to GIPA's federal counterpart, the Genetic Information Nondiscrimination Act, 42 U.S.C. § 2000ff, *et seq*. ("**GINA**"). However, GINA has a similar separation of requirements to GIPA, where GINA sub-section (a) prohibits discrimination based on genetic information and sub-section (b) prohibits unlawful requests for such information. 42 U.S.C. § 2000ff-1. That Defendants rely on caselaw interpreting the former sub-section of GINA, rather than the latter, shows a misunderstanding of the distinction between a claim for unlawful discrimination and an unlawful request.

Defendants' misunderstanding is clear from their reliance on *Rusthoven v. Victor Sch. Dist. #7*, 2014 U.S. Dist. LEXIS 161134 (D. Mont. Nov. 17, 2014), where the plaintiff never alleged that the defendant improperly requested genetic information in violation of 42 U.S.C. § 2000ff-1(b), but instead alleged that the defendant **discriminated** against him in violation of 42 U.S.C.

5

§ 2000ff-1(a) and improperly disclosed genetic information in violation of 42 U.S.C. § 2000ff-5(b). *Rusthoven*, 2014 U.S. Dist. LEXIS 161134 at *8-9. The plaintiff only alleged he had posted information about his genetic disorder on his Facebook account and that an employee of the defendant saw some of the plaintiff's posts. *Id*. On this basis, the court found that the plaintiff had failed to state a claim for discrimination or improper disclosure.

Instead, the Court should look to *EEOC v. Grisham Farm Prods.*, 191 F. Supp. 3d 994 (W.D. Mo. 2016), wherein the court held that the defendant had violated 42 U.S.C. § 2000ff-1(b) by simply asking a prospective employee if he had consulted a doctor in the previous two years or discussed future diagnostic testing. *Id.* at 998. The plaintiff refused to respond to these questions. *Id.* at 995. The court reasoned that these questions would require an applicant to reveal genetic information and thus constituted an illegal request. *Id.* Like in *Grisham*, the allegation here that Tyson improperly requested genetic information in and of itself is the basis for the violation.

### C. The Legislative Findings Stress the Importance of the Right to Privacy

Defendants selectively utilize legislative commentary in a weak attempt to pigeonhole the purpose of GIPA to be only preventing discrimination. However, the Court need look no further than GIPA itself to understand that its purpose is far broader. The Legislature concluded in Section 5 of the act: "The public health will be served by facilitating voluntary and confidential nondiscriminatory use of genetic testing information." 410 ILCS 513/5(3). The Legislature was concerned because "[d]espite existing laws, regulations, and professional standards …, many members of the public are deterred from seeking genetic testing **because of fear** that test results will be disclosed … or will be used in a discriminatory manner." 410 ILCS 513/5(2) (emphasis added). It, therefore, created GIPA to reassure the public that they could obtain genetic testing without fear of it being misused later. The best way to do that was to provide robust protection

for the confidentiality of genetic information in order to prohibit even the perception that such information might be misused. *See* Motion, p. 5 (a "core tenant" of GIPA is "to ensure that an individual's '[genetic] information will be confidential …'" *citing* S. Debate Transcript, 90th Gen. Assemb. No. 47, at 3 (Ill. 1997) (statement of Sen. Hawkinson)). Confidentiality of genetic information was likewise a core tenant of GINA: "this is a civil rights issue and a privacy issue …" 154 Cong. Rec. H2959 (daily ed. May 1, 2008) (statement of Rep. Castor).

Given that the stated goal of GIPA was to eliminate even the fear that genetic information could be used against an individual, thereby freeing that individual to acquire genetic information for health purposes, it makes sense that the Legislature would tell employers they could not "solicit, request, require or purchase genetic testing or genetic information." 410 ILCS 513/25(c)(1). Even a request for genetic information alone would raise questions about why the employer was asking for that information and could discourage people from obtaining such information. Because the purpose of GIPA is broader than merely preventing discrimination, Defendants' argument that a request, without misuse, does not give rise to an actionable claim is inconsistent with the stated purpose of GIPA and should be rejected.[1]

Defendants also incorrectly assert that BIPA is not "instructive" when interpreting GIPA. Beyond simply using similar language in the two statutes, the legislative findings and intent for both GIPA and BIPA are strikingly similar. Like in GIPA, in BIPA the Legislature found that "[d]espite limited State law regulating … biometrics, many members of the public are deterred

---

[1] Defendants display a lack of confidence in their arguments by employing *ad hominem* attacks against Plaintiffs' counsel and noting that counsel has filed multiple GIPA-related actions. *See In re Stericycle Sec. Litig.*, 35 F.4th 555, 572 (7th Cir. 2022) ("counsel's *ad hominem* attack on [the objector's counsel] was not professional and served only to emphasize the weakness of lead counsel's own arguments"). First, use of counsel's "past work to undermine his substantive arguments [is] improper and not at all persuasive." *Id.* at 572. Second, Defendants are wrong that the cited cases present "cookie cutter Complaints", because each contains factual allegations specific to that matter. Third, the fact that multiple companies violated GIPA does not present a reason to dismiss this action, but rather serves to underscore the need for greater enforcement of GIPA.

from partaking in biometric identifier-facilitated transactions" because of their potential misuse, and that "[t]he public welfare, security, and safety will be served by regulating … biometric identifiers and information." 740 ILCS 14/5(e), (g). In both statutes the "General Assembly has codified that individuals possess a right to privacy in and control over" personal information concerning their bodies. *Rosenbach*, 2019 IL 123186 at ¶ 33. Given these similarities, the Court should adopt *Rosenbach's* conclusion that the Legislature intended the private right of action to apply to any violation of the act, regardless of pecuniary damages, and reject Defendants' attempt to create new requirements for that right of action.

### III. PLAINTIFFS PROPERLY ALLEGE DEFENDANTS VIOLATED GIPA

#### A. The FAC Properly Alleges Tyson Fresh Meats Violated GIPA

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face…. A claim is plausible if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Tedrow v. Franklin Twp. Cmty. Sch. Corp.*, No. 1:21-CV-453 RLM-MG, 2022 U.S. Dist. LEXIS 45553, at *8-9 (S.D. Ind. 2022) (internal quotations omitted).

Defendants concede that the FAC alleges that Tyson Fresh Meats "asked [Mr. Jett] to provide the medical history of … his family members regarding various medical conditions, including cancer and cardiac health."[2] *See* Motion, p. 7 (*citing* FAC, ¶¶ 48, 49, 52, 55). GIPA utilizes the same definition of "genetic information" as GINA, which includes the manifestation of a disease or disorder in family members. *See* 410 ILCS 513/10; 42 U.S.C. § 2000ff(4)(A)(iii).

---

[2] Defendants incorrectly assume that there is no dispute that Tyson sought genetic information as a "condition of employment," rather than as part of a "preemployment application." Motion p. 8, n. 4. The health assessment was part of the hiring process. *E.g.,* FAC ¶ 55 ("Mr. Jett underwent another **pre-employment** physical" (emphasis added)).

8

Thus, the FAC's allegations support Plaintiffs' claim that Tyson Fresh Meats requested Mr. Jett's genetic information in violation of GIPA, putting Tyson Fresh Meats on notice of the claims and showing that the claim is more than plausible.

Defendants argue that the FAC "fails to explain how, as a matter of common sense, Tyson Fresh Meats could have misused his family medical history 'to affect the terms and conditions of [his] employment' if he refused to disclose the information in the first instance." Motion, pp. 7-8. Defendants' contention that misuse or an affect on "the terms and conditions of [his] employment" are required for Mr. Jett's claim is again an unfounded strawman argument. As shown the plain language of Section 25(c)(1) shows a GIPA violation occurs when an employer "requests" genetic information – the **request** is the unlawful act and any subsequent response by the plaintiff is inapposite to the claim. Moreover, Defendants' references to the term "use" within GIPA's legislative history fails to support a finding that the effect of GIPA is narrower than the statute's plain language. *See Lowe v. Atlas Logistics Group Retail Servs. Atlanta, LLC*, 102 F. Supp. 3d 1360, 1367-69 (N.D. Ga. 2015) (rejecting "cherry-pick[ed]" statements from the legislative process to argue that GINA's prohibited conduct was narrower than the plain language).

In addition, federal courts regularly hold that employers can be libel under GINA even when the defendant never obtained the plaintiff's protected genetic information in response to an unlawful request. *See Grisham*, 191 F. Supp. 3d at 994 (finding the defendant violated GINA even when the plaintiff refused to provide genetic information in response to the defendant's request); *see also Tedrow v. Franklin Twp. Cmty. Sch. Corp.*, 2022 U.S. Dist. LEXIS 45553, *16 (S.D. Ind. 2022) (denying the defendant's motion to dismiss the plaintiff's GINA claim even though the defendant never acquired the plaintiff's genetic information); *EEOC v. Dolgencorp, LLC*, 2022 U.S. Dist. LEXIS 132466, *38 (N.D. Ala. 2022) (granting the plaintiff's motion for partial

9

summary judgment as to liability for a GINA claim because "Dollar General's agent, … asked … job candidates whether their grandparents, parents, or children had significant medical problems, in violation of 42 U.S.C. § 2000ff-1(b)."); *Jackson v. Regal Beloit Am., Inc.*, 2018 U.S. Dist. LEXIS 103682, *41-43 (E.D. Ky. 2018) (denying an employer's motion for summary judgment on GINA claim for unlawful request of genetic information where the plaintiff "refused to turn over her genetic information…" and although the defendant took no adverse employment action against the plaintiff, "Jackson's GINA claim arises from § 2000ff-1(b)" and "Because Jackson has put forward proof that the medical records requested contained protected 'genetic information' in the form of her family history … she has proven that Regal made an unlawful request for genetic information.").

### B. The FAC Properly Alleges AdvancePierre Violated GIPA

Defendants contend that the FAC fails to plead a cause of action against AdvancePierre because Ms. Bailey "fails to plead any facts averring which 'terms and conditions' [of her employment] were 'affected' or how they were affected." Motion, p. 9. Again, an affect on her employment is immaterial to Ms. Bailey's claim against AdvancePierre because the claim is based upon an unlawful request rather than discrimination. Ms. Baily is not claiming that AdvancePierre discriminated against her by using her genetic information to affect the terms or conditions of employment. Instead, the FAC alleges that AdvancePierre (utilizing the same policies and procedures as Tyson Fresh Meats) unlawfully requested her genetic information during the hiring process. FAC, ¶¶ 33-39. *See supra* Section II.A. Accordingly, the FAC properly pleads that AdvancePierre violated Section 25(c)(1) of GIPA.

Further, Defendants' contention that Plaintiffs did not allege the unlawful request was a condition of employment or condition of an application is easily refuted by a cursory reading of

the FAC. FAC, ¶¶ 78-79. The FAC alleges that each Plaintiff was "required" to attend the preemployment physical. FAC ¶¶ 35, 46. Something that is required is not optional, and nothing in the FAC suggests that Plaintiffs could have refused the physical and still been hired. Thus, the FAC makes clear that any offer of employment was conditioned upon Plaintiffs attending the physicals and subjecting themselves to the unlawful request for their genetic information.

### C. The FAC Properly Alleges Tyson Foods Violated GIPA

For the same reasons, the FAC properly pleads that Tyson Foods is liable to Plaintiffs for indirectly requesting their genetic information at the preemployment physicals.

GIPA's prohibition of requests for genetic information apply to both direct and indirect requests. *See* 410 ILCS 513/25(c) ("An employer … shall not **directly or indirectly** do any of the following …") (emphasis added). The FAC alleges that Tyson Foods' employees or agents directed individuals at AdvancePierre and Tyson Fresh Meats to solicit the family medical histories of individuals undergoing the physicals. FAC, ¶ 60. This is evidenced by the identical forms used for both of Plaintiffs' physicals. FAC, ¶ 61. These forms indicate Tyson Foods indirectly violated GIPA by instructing its subsidiaries to verbally solicit Plaintiffs' protected genetic information.

In addition, Tyson Foods falls within GIPA's definition of an employer and is thereby prohibited from indirectly requesting the genetic information of Illinois residents. As Defendants acknowledge: "The term 'employer' includes any "person employing employees within the State [of Illinois]." Motion, p. 11; 410 ILCS 513/10. The FAC alleges that GIPA defines Tyson Foods as an employer. FAC, ¶ 76.

Defendants' position that direct employment is required to bring a GIPA claim is unfounded because this would exclude prospective employees who applied for employment, but were not hired, from the class of individuals who may bring a GIPA claim. If Defendants'

11

argument is taken at face value, then a company which improperly requested genetic information from a prospective employee and refused to hire them would be immunized from GIPA liability. Regardless, GIPA requires companies to treat genetic information in a manner consistent with the requirements of federal law, including GINA. 410 ILCS 513/25(a). GINA does not require a plaintiff to be employed by a defendant in order to bring an unlawful request claim. *See Grisham*, 191 F. Supp. 3d at 994 (finding the defendant liable for violating GINA by simply asking a prospective employee to disclose genetic information).

## IV. PLAINTIFFS HAVE STANDING TO BRING THEIR CLAIMS

Defendants do not contest that Plaintiffs have standing to bring their claims against AdvancePierre and Tyson Fresh Meats, but dispute standing only as to Tyson Foods. Defendants' already waived any standing arguments when they removed this action. Even so, their arguments fail because the FAC properly states claims against Tyson Foods in light of the Seventh Circuit's direct participant liability doctrine. To demonstrate Article III standing, three requirements must be satisfied: (1) Plaintiffs must have suffered an actual or imminent, concrete and particularized injury-in-fact; (2) there must be a causal connection between the injury and the conduct complained of; and (3) there must be a likelihood that this injury will be redressed by a favorable decision. *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 620-621 (7th Cir. 2020).

### A. Defendants Removed to Federal Court, Thereby Conceding its Jurisdiction

Plaintiffs filed this action in the appropriate state court. Tyson Foods then removed the action to the present court "[p]ursuant to 28 U.S.C. §§ 1332, 1441 and 1446." Dkt. No. 1, p. 1. In removing this action, Tyson Foods conceded jurisdiction in this Court, and it should not be permitted to change that representation in order to use removal as a mere game piece.

Section 1441 permits removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a). To satisfy this requirement, in its Notice of Removal, Tyson Foods represented that "this Court has original jurisdiction over Plaintiffs' claims under" the Class Action Fairness Act, 28 U.S.C. § 1332(d), and diversity jurisdiction. Dkt. No. 1, ¶ 11.

In light of its unequivocal statement representing that this Court has original jurisdiction, Tyson Foods' current "argument that this court lacks subject matter jurisdiction even though removal was proper and this court had original jurisdiction is … without merit." *Person v. Bank of Am., N.A.*, No. 3:13-cv-00283-JE, 2013 U.S. Dist. LEXIS 91333, at *5 (D. Or. 2013) (denying Rule 12(b)(1) motion following removal to federal court). Tyson Foods points to no changes in the FAC that caused this court to lose the original jurisdiction that Tyson Foods already represented existed. As such, the Court should hold that, in removing this action, Tyson Foods conceded jurisdiction in this Court and, absent a factual change, cannot now challenge that jurisdiction.

### B. Plaintiffs Allege Concrete and Particularized Injuries

"[A] 'concrete' injury must actually exist but need not be tangible." *Bryant*, 958 F.3d at 621 (*citing Spokeo, Inc. v. Robins*, 578 U.S. 330, 331 (2016)). In the context of an alleged statutory violation, "the plaintiff must show that the statutory violation presented an 'appreciable risk of harm' to the underlying concrete interest that [the legislature] sought to protect by enacting the statute." *Bryant*, 958 F.3d at 621. In *Bryant*, the Seventh Circuit held that the plaintiff satisfied the injury-in-fact requirement of Article III for her BIPA claim:

> Applying Justice Thomas's rubric [in *Spokeo*], we have no trouble concluding that Bryant was asserting a violation of her own rights—her fingerprints, her private information—and that this is enough to show injury-in-fact without further tangible consequences. This was no bare procedural violation; it was an invasion of her private domain, much like an act of trespass would be. Each individual person has distinct biometric identifiers. The common interest in robust protections of personal

13

> privacy, however, is the same as the shared support for the types of laws Justice Thomas mentioned. A direct application of *Spokeo*, in our view, leads to the result that Bryant satisfied the injury-in-fact requirement of Article III.

*Bryant*, 958 F.3d 617, 624.[3]

Like the plaintiff in *Bryant*, Plaintiffs here have satisfied the injury-in-fact requirement of Article III because they allege an invasion of their privacy rights to their genetic information due to Defendants' illegal solicitation.

### C. Plaintiffs Allege Tyson Foods' Conduct Caused Their Injuries

Under the direct participant liability doctrine, a parent corporation may be held liable for the wrongdoing of a subsidiary. Per the Illinois Supreme Court, the "key elements" to direct participant liability is the parent corporation's "specific direction or authorization of the manner in which an activity is undertaken and foreseeability." *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 290 (2007). A parent company can be held liable if it either "specifically directs an activity, where injury is foreseeable" or "mandates an overall course of action and then authorizes the manner in which specific activities contributing to that course of action are undertaken." *Id*.

Defendants hang their hat on the fact that Tyson Foods did not directly employ Plaintiffs. But the statutory language of GIPA is broad and does not require direct employment because Section 25 of GIPA prohibits employers from requesting genetic information of a **person** or a family member of the **person** as opposed to an employee. *See Pelech v. Kladd-Joss, LP*, 815 F. Supp. 260, 262 (N. D. Ill. 1993) (noting Title VII should be construed broadly because of "the statute's use of the term 'any individual,' instead of 'employee'" and that "courts have held that

---

[3] In Illinois, "a statute should be construed in conjunction with other statutes touching on the same or related subjects considering the reason and necessity of the law, the evils to be remedied, and the objects and purposes to be obtained." *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175, *P45 (quoting *Maschek v. City of Chi.*, 2015 IL App (1st) 150520, ¶ 17. BIPA has been construed in conjunction with GIPA. *See Bridges v. Blackstone Grp., Inc.*, No. 21-CV-1091-DWD, 2022 WL 2643968, at *8-9 (S.D. Ill. July 8, 2022).

14

Title VII may apply even in the absence of a direct employment relationship between the plaintiff and defendant"); *see also EEOC v. Illinois*, 69 F.3d 167, 171-172 (7th Cir. 1995) (noting that an entity that "pulls the strings" in the background and essentially controls employment decisions will be considered the de facto employer); *see also* Motion, p. 5, noting Title VII is instructive.

Here, the direct participant liability doctrine grants Plaintiffs standing to allege their claims against Tyson Foods. As alleged in the FAC, upon information and belief, an agent or employee of Tyson Foods instructed Plaintiffs' employers to request their genetic information. FAC, ¶ 60. This allegation is supported by the use of the same forms at both AdvancePierre and Tyson Fresh Meats, and the similar procedures implemented at both companies. FAC, ¶¶ 35-39, 45-48, 61. Thus, the unlawful requests can be traced to Tyson Foods through the conduit of its own personnel and management. *See* Motion, p. 13 (*citing* FAC, ¶¶ 57-61, 84). In doing so, Tyson Foods used its ownership interest to command rather than merely cajole its subsidiaries.

### D. Plaintiffs' Injuries will be Redressed by a Favorable Decision

GIPA provides statutory damages for violations of Section 25(c)(1), including, *inter alia*, $2,500 or actual damages for negligent violations, and $15,000 or actual damages for each willful or intentional violation. 410 ILCS 513/40. Thus, Plaintiffs' injuries will be redressed by a favorable decision finding that Defendants violated their privacy rights by improperly requesting Plaintiffs' genetic information.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to deny Defendants' motion to dismiss in its entirety.

Dated: August 9, 2023          Respectfully submitted,

                                             */s/ Kyle D. McLean*
                                             Kyle D. McLean (SBN 6344126)

SIRI & GLIMSTAD LLP
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
T. (213) 376-3739
E. kmclean@sirillp.com

Elizabeth A. Brehm
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
T. 212-532-1091
E. ebrehm@sirillp.com

Edward A. Wallace
Mark R. Miller
Molly C. Wells
WALLACE MILLER
150 N. Wacker Drive, Suite 1100
Chicago, IL 60606
T. (312) 261-6193
E. eaw@wallacemiller.com
   mrm@wallacemiller.com
   mcw@wallacemiller.com

COUNSEL FOR PLAINTIFFS

16