**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MICHELLE BAILEY and MICHAEL
JETT, individually and on behalf of
themselves and all others similarly
situated,

Plaintiffs,

v.

ADVANCEPIERRE FOODS, INC.,
TYSON FRESH MEATS, INC., and
TYSON FOODS INC.,

Defendants.

No. 23-cv-01537
Judge Franklin U. Valderrama

### ORDER

The access to and use of genetic information implicates profoundly intimate health decisional and proprietary privacy concerns. [1] Recognizing this and other public interests in protecting such information, including incentivizing genetic testing, improving patient care, controlling health care costs, and safeguarding against discrimination, the Illinois legislature enacted the Genetic Information Privacy Act, 410 ILCS 513/25 *et seq.* (GIPA).

GIPA, among other things, prohibits employers from seeking pre-employment genetic information from applicants. Plaintiffs Michelle Bailey (Bailey), a former employee of AdvancePierre Foods, Inc. (AdvancePierre), and Michael Jett (Jett)[2], a former employee of Tyson Fresh Meats, Inc. (Tyson Fresh Meats), bring this putative

---

[1] Anita L. Allen, *Genetic Privacy: Emerging Concepts and Values*, *in* GENETIC SECRETS: PROTECTING PRIVACY AND CONFIDENTIALITY IN THE GENETIC ERA 31, 33 (Mark A. Rothstein ed., 1997).

[2] The Court collectively refers to Bailey and Jett as "Plaintiffs."

class action against Defendants AdvancePierre, Tyson Fresh Meats, and their parent company, Tyson Foods, Inc. (Tyson Foods) (collectively, Defendants), alleging that Defendants violated GIPA by unlawfully requesting genetic information during their pre-employment physical examinations. *See generally* R.[3] 24, First Am. Compl. (FAC).

Before the Court is Defendants' fully briefed motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). R. 25, Mot. Dismiss; R. 26, Memo. Dismiss. For the reasons that follow, (1) Bailey's claim asserted against AdvancePierre may proceed, (2) Jett's claims asserted against Tyson Fresh Meats and Tyson Foods are dismissed with prejudice, and (3) Bailey's claim asserted against Tyson Foods is dismissed without prejudice with leave to amend consistent with this Order.

## Background[4]

### A. Plaintiff Michelle Bailey

In January 2019, Bailey applied for a Shipping Checker Laborer position with AdvancePierre. FAC ¶¶ 32–33. As part of the application and hiring process, AdvancePierre, pursuant to an alleged Tyson Food's policy, required Bailey to undergo a pre-employment physical examination. *Id.* ¶¶ 34–35.

---

[3]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.
[4]The Court accepts as true all of the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of Plaintiffs. *St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016) (internal citations omitted).

During the exam, Nurse Kathern Hearn, an AdvancePierre employee, verbally listed various medical conditions and asked Bailey to respond by stating whether she or any family members had those conditions. FAC ¶¶ 37–38. Bailey, in response, disclosed genetic information about her family members, including certain medical conditions they were diagnosed with. *Id.* ¶ 39.

AdvancePierre allegedly used the result of Bailey's examination to affect the terms and conditions of her employment. FAC ¶ 40. Upon completing all the required steps in the hiring process, including the physical examination, AdvancePierre hired Bailey. *Id.* ¶ 42. Bailey left AdvancePierre's employment around August 2019. *Id.* ¶ 43.

### B. Plaintiff Michael Jett

In July 2021, Jett applied for a General Laborer position with Tyson Fresh Meats. FAC ¶ 44. As part of the application and hiring process, Tyson Fresh Meats, pursuant to an alleged Tyson Food's policy, required Jett to undergo a pre-employment physical examination conducted by Nurse Sherri Dickey, an employee of Tyson Fresh Meats. *Id.* ¶ 46.

During the exam, Nurse Dickey asked Jett to provide both his and his family's medical history regarding various conditions, including cancer and cardiac health. FAC ¶ 48. Jett, however, did not disclose his family's medical history, believing that such information was irrelevant to his application for employment. *Id.* ¶ 49.

Tyson Fresh Meats allegedly used the results of Jett's examination to affect the terms and conditions of his employment. FAC ¶ 51. Upon completing all the required steps in the hiring process, including the physical examination, Tyson Fresh

Meats hired Jett. *Id*. ¶¶ 51–52. Jett left Tyson Fresh Meat's employment around October 2021, and he was rehired for the same position in February 2022. *Id*. ¶¶ 53–54.

When Jett was rehired, he underwent another pre-employment physical conducted by Nurse Dickey, where she again inquired about Jett's genetic family medical history. And once again, Jett made no such disclosures despite the inquiry. FAC ¶ 55.

Plaintiffs assert one claim against Defendants on behalf of themselves and all others similarly situated, alleging Defendants violated Section 25(c)(1) of GIPA when Defendants improperly requested their genetic information. Defendants now move to dismiss Plaintiffs' claim under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).

## Legal Standard

### A. Subject Matter Jurisdiction: Fed. R. Civ. P. 12(b)(1)

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But district courts may also "look beyond the jurisdictional allegations of the complaint and view

whatever evidence has been submitted on the issue to determine whether *in fact* subject matter jurisdiction exists." *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)). In that case, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Apex Digital*, 572 F.3 at 444 (internal citations omitted).

**B. Failure to State a Claim: Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint. *Hallinan*, 570 F.3d at 820. Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

Plaintiffs allege that Defendants violated GIPA by requesting genetic information during their pre-employment physical examinations. *See generally* FAC.

Defendants maintain that GIPA forecloses Plaintiffs' claims. *See generally* Mot. Dismiss; Memo. Dismiss. That is, "an employer's mere 'request' for or 'inquiry' about an employee's family medical history, without a corresponding misuse of that information by the employer, does not give rise to an actionable claim." Mot. Dismiss ¶ 3. Applying this interpretation of GIPA, Defendants advance three arguments to support dismissal. First, Tyson Fresh Meats could not have misused Jett's family medical history to affect the terms and conditions of his employment because Jett never disclosed such information. And in the alternative, Jett does not show and cannot show that the allegedly requested information was a "condition of employment," as required under GIPA, because Tyson Fresh Meats hired Jett despite his non-disclosure. Second, Bailey's claim against AdvancePierre should similarly be dismissed because, even though Bailey allegedly disclosed her family genetic history during her pre-employment physical exam, she does not allege that she suffered any adverse employment action or other consequences because of her disclosure. Third, Plaintiffs lack Article III standing to bring GIPA claims against Tyson Foods because they have failed to plead facts asserting that Tyson Foods was their direct or joint "employer," as required to assert a GIPA claim. And in the alternative, Plaintiffs fail to state a claim against Tyson Foods for the same reasons Plaintiffs fail to state a

claim against AdvancePierre and Tyson Fresh Meats. Memo. Dismiss at 7–13. The Court addresses each argument below.

## I. An Improper Request for Genetic Information Alone is Sufficient to State an Actionable Claim Under Section 25(c)(1)

As a preliminary matter, resolving Defendants' motion requires interpretation of GIPA. When federal courts interpret a state law, the "task is to decide a question of state law 'as it either has been determined by the highest court of the state or as it would be by that court if the present case were before it now.'" *Astellas US Holding Inc., v. Fed. Ins. Co.*, 66 F.4th 1055, 1060 (7th Cir. 2023) (cleaned up).[5]

Illinois courts, when interpreting a statute, seek to ascertain and effectuate the legislature's intent. *Cothron v. White Castle System, Inc.*, 216 N.E.3d 918, 919 (Ill. 2023), as modified on denial of reh'g (July 18, 2023). The best indicator of legislative intent is the statute's language itself, given its plain and ordinary meaning. *Id*. In determining the plain and ordinary meaning of a statute, courts consider the statute in its entirety, the subject addressed, and the apparent intent of the legislature when it enacted the statute. *Hayashi v. Illinois Dept. of Fin. and Prof. Reg.*, 25 N.E.3d 570, 576 (Ill. 2014). "When the language is clear and unambiguous, [courts] must apply the statute without resort to further aids of statutory construction." *Cothron*, 216 N.E.3d at 924. Only if the text of a statute is ambiguous may courts look to other sources to ascertain the legislature's intent. *Id*. A statute is ambiguous if it can be

---

[5]This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

fairly understood by reasonably well-informed persons in two or more different ways.

*Advincula v. United Blood Services*, 678 N.E.2d 1009, 1018 (Ill. 1996).

The Court begins, as it must, with GIPA's text, which provides that "[a]n employer . . . shall not directly or indirectly do any of the following:

> (1) Solicit, request, require, or purchase genetic testing or genetic information of a person or a family member of the person . . . *as a condition of employment*, preemployment application . . . ;

> (2) affect the terms, conditions, or privileges of employment, preemployment application . . . or terminate the employment . . . of any person because of genetic testing or genetic information with respect to the employee or family member . . . ;

> (3) limit, segregate, or classify employees in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee because of genetic testing or genetic information with respect to the employee or a family member . . . ;

> (4) retaliate through discharge or in any other manner against any person alleging a violation of this Act or participating in any manner in a proceeding under this Act."

410 ILCS 513/25(c) (emphasis added).

In order to enforce these prohibitions, GIPA provides a private right of action, stating: "[a]ny person aggrieved by a violation . . . shall have a right of action . . . against an offending party." 410 ILCS 513/40(a). Under this private right of action, a party may recover, for each violation: (a) $2,500 or actual damages, whichever is greater, for a negligent violation, or $15,000 or actual damages, whichever is greater, for a willful or reckless violation; and (b) reasonable attorneys' fees. *Id.*

In Defendants' view, a claim under Section 25(c)(1) requires a plaintiff to allege an improper request for genetic information *with* a corresponding misuse such as

discrimination or some other adverse employment action. Memo. Dismiss at 2. To support this contention, Defendants maintain that, besides GIPA's purpose, text, and legislative history, "the critical backdrop against which the Court should judge Defendants' Motion to Dismiss" is GIPA's federal corollary: the Genetic Information Nondiscrimination Act ("GINA"), 42 U.S.C. §§ 2000ff *et seq.,* which, in Defendants' view, like GIPA, "bars employers from using an individual's genetic information . . . to discriminate against the individual . . . ." Memo. Dismiss at 4–6 (citing sources, including; 410 ILCS 513/25 (1998); S. Debate Transcript, 90th Gen. Assemb. No. 47, at 3 (Ill. 1997) (statement of Sen. Hawkinson) and 29 C.F.R. § 1635.4)).

Plaintiffs counter that neither GIPA's text, nor its legislative history, support Defendants' view, arguing that an improper request alone suffices to state a claim under Section 25(c)(1). R. 29, Resp. at 3. To support their position, Plaintiffs posit that Defendants' limited view of GIPA (and GINA) does not comport with the protections afforded by the Illinois legislature (or Congress). Resp. at 3–7. That is, while GIPA undoubtedly protects against discrimination and other misuse of genetic information, like BIPA, the private right of action also applies to any violation of the statute, including an improper request under Section 25(c)(1). *Id.* The Court agrees with the Plaintiffs.

For starters, the parties do not cite, nor has the Court's research unearthed, any Illinois Supreme Court or state appellate court decision addressing whether misuse (or some other adverse employment action) is an element of a claim under Section 25(c)(1). Therefore, as previously noted, the Court's task is to predict how the

Illinois Supreme Court would determine the issue if the present case were before it now.

Here, Plaintiffs' claims are premised on Section 25(c)(1) of GIPA. *See generally* FAC. Recall that Section 25(c)(1) prohibits employers from soliciting, requesting, or requiring the "genetic information of a person . . . as a condition of employment." 410 ILCS 513/25(c)(1). The plain language of Section 25(c)(1) reveals how far its prohibitory language sweeps. *See Blum v. Koster*, 919 N.E.2d 333, 338 (Ill. 2009) ("[Courts] do not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the expressed intent."). Nothing in Section 25(c)(1) cabins its application to situations where the employer misuses the ill-gotten information. 410 ILCS 513/25(c)(1). True, Section 25 prohibits misuse, but it does so in a different subsection. *See* 410 ILCS 513/25(c)(3).

In short, Defendants' suggested interpretation adds an element to a Section 25(c)(1) claim that the legislature did not intend, as surely the legislature understood the distinction between the solicitation of an applicant's genetic information, and the misuse of that information. *See Bhalerao v. Illinois Dept. of Fin. and Prof. Regulations*, 834 F. Supp. 2d 775, 794 (N.D. Ill. 2011) ("a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express.") (cleaned up). Section 25(c)(1) governs the former, and Sections 25(c)(2)-(4) cover the latter.

The Court's interpretation of GIPA is also harmonious with a recent Northern District court case which, as Plaintiffs note in their Notice of Supplemental Authority,

R. 35, rejected Defendants' interpretation of Section 25(c)(1): *Taylor v. Union Pac. R.R. Co.*, 2024 WL 3425751, at *7 (N.D. Ill. July 16, 2024). The Court finds *Taylor* instructive.

In *Taylor*, the employer-defendant required plaintiffs, who each applied for positions with defendant, to submit to pre-employment physicals. During these physicals, medical providers employed by defendant "solicited, requested, or required" them to disclose their family medical history, including whether their parents had cardiac health issues, cancer, diabetes, or other conditions. *Taylor*, 2024 WL 3425751, at *1. Plaintiffs asserted that their hiring was conditioned upon them completing the physical, including by providing their family medical history. *Id.* Plaintiffs were each ultimately hired by the defendant. *Id.*

The plaintiffs sued defendant, alleging that the request of genetic information violated Section 25(c)(1). *Taylor*, 2024 WL 3425751, at *1 The defendant moved to dismiss the complaint on several grounds, including failure to allege that defendant used the genetic information as a means for discrimination. *Id.* at 6. Put differently, defendant argued that Section 25(c)(1), when considered in context, is not a separate cause of action detached from discriminatory use. *Id.* at 7.

The *Taylor* court rejected defendant's argument, finding that Section 25(c)(1) "does not include the 'misuse' requirement that [defendant] asks the Court to read in." *Taylor*, 2024 WL 3425751, at *7. Rather, it prohibits "solicit[ing], request[ing], require[ing] or purchas[ing] genetic information as a condition of employment and preemployment application[.]" *Id.* (cleaned up). The *Taylor* court explained that:

First, Section 25(c)(1)'s language is plain and unambiguous, and it is not made ambiguous by a broadly worded section title. Conditioning employment or preemployment application on the receipt of genetic information is, broadly speaking, a kind of "use" of genetic information. And that is what section titles do; they speak broadly. Indeed, the title of Section 25 itself must be read in context. GIPA is meant to regulate the confidentiality and nondisclosure of genetic information along with genetic-based discrimination. *See* 410 ILCS 14/5. The Court's "inquiry must cease if the statutory language is unambiguous," as Section 25(c)(1)'s is, "and the statutory scheme is coherent and consistent," as GIPA is here. *Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708, 711 (7th Cir. 2005) (citation and quotation marks omitted).

Second, [employer-defendant] ignores that Section 25(c) prohibits employers from "directly or indirectly do[ing] ***any*** of the following" enumerated acts. 410 ILCS 513/25(c) (emphasis added). The term "any" shows that the legislature intended for each of the actions that followed to be illegal. Moreover, it would be incoherent to read Section 25(c) as providing only a single cause of action. One subsection prohibits employers from "retaliat[ing] ... against any person alleging a violation of this Act." 410 ILCS 513/25(c)(4). If Section 25(c) does not provide separate causes of action, then a plaintiff would only have a cause of action for discrimination after being retaliated against for filing a cause of action for discrimination. *That is nonsensical*.

*Id.* (emphasis added).

Here, Defendants argue, as the employer-defendant did in *Taylor*, that a request for genetic information alone does not give rise to a cause of action under Section 25(c)(1). *See generally* Mot. Dismiss. Pointing to the statute's text and context, including its legislative history, Defendants insist that, consistent with the legislature's intent, Plaintiffs must show either discrimination, misuse, or an adverse employment action to state a claim. Memo. Dismiss at 4–9. But, as the *Taylor* court notes and Plaintiffs argue, while "[o]ther provisions in Section 25 explicitly address 'using' genetic information to discriminate," (*Taylor*, 2024 WL 3425751, at *7) "[a] complete reading of Section 25 shows that sub-section (c)(3) addresses discrimination,

sub-sections (a) and (b) (among others) address misuse, and sub-sections (c)(2) and (c)(4) address adverse employment actions. Nothing in either Section 25 . . . of GIPA suggests that a plaintiff must show a violation of sub-sections (c)(2) through (c)(4) to establish a claim under sub-section (c)(1)." Resp. at 5.

Notably, in *Taylor*, when considering what is meant to be "aggrieved by" a GIPA violation, both parties identified BIPA as the Illinois statute that could aid the court in its analysis because of its "identical relevant language and similar remedial purpose. *Compare* 740 ILCS 14/20 ('Any person aggrieved by a violation of [BIPA] shall have a right of action ... against an offending party.'), *with* 410 ILCS 513/40(a) ('Any person aggrieved by a violation of [GIPA] shall have a right of action ... against an offending party.')." *Taylor*, 2024 WL 3425751, at *2. This position mirrors Plaintiffs' contention that "[t]he Legislature created a broad individual right of action to ensure GIPA, using the same language that it used in [BIPA]." Resp. at 4 (citing *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197 (Ill. 2019)). Without meaningfully distinguishing BIPA, except for the implication that it is not "instructive," (Memo. Dismiss at 6) Defendants urge the Court to instead follow the guidance provided by GIPA's federal counterpart, GINA. Memo. Dismiss 4–5. The Court, however, finds that the case law interpreting BIPA sheds light on the issues presented in this case, as did the court in *Taylor*.

Beyond the similar language used in BIPA and GIPA, BIPA is especially instructional here given that the Illinois Supreme Court addressed an issue analogous to the one currently before the Court. *See Rosenbach*, 129 N.E.3d at

1200 (holding that "an individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under [BIPA], in order to qualify as an 'aggrieved' person"); *see also Bridges v. Blackstone Grp., Inc.*, 2022 WL 2643968, at *3 (S.D. Ill. July 8, 2022) (considering BIPA, applied "the definition of 'aggrieved person' used by the *Rosenbach* court to GIPA.").

Moreover, even if the Court were to accept Defendants' invitation to treat Section 25(c)(1) like GINA, instead of BIPA, such an endeavor would not alter the Court's conclusion. *See* Memo. Dismiss at 8–9 (citing *Rusthoven v. Victor Sch. Dist. No. 7*, 2014 WL 6460190 (D. Mont. Nov. 17, 2014)). Contrary to Defendants' suggestion, GINA, as Plaintiffs note, also distinguishes between a claim for unlawful discrimination (42 U.S.C. § 2000ff-1(a)) and a claim for an unlawful request (42 U.S.C. § 2000ff-1(b)). Resp. at 5. And as another federal court held in *EEOC v. Grisham Farm Prods.*, 191 F. Supp. 3d 994, 997 (W.D. Mo. 2016), the mere solicitation of protected genetic information violates GINA, as 42 U.S.C. § 2000ff-1(b) prohibits employers from "request[ing]. . . genetic information with respect to an employee or a family member of the employee." (quoting 42 U.S.C. § 2000ff-1(b)).

At bottom, "GIPA is not only an anti-discrimination statute. It is also intended to require or promote voluntary and confidential use of genetic testing information, and to prevent genetic information from being disclosed without consent. To that end, [Section 25(c)(1)] protects against a form of involuntary disclosure by prohibiting employers from merely solicit[ing], request[ing], or requir[ing] the genetic information of a person . . . as a condition of employment [or] preemployment

application. GIPA gives individuals certain rights to privacy over their genetic information beyond simply prohibiting its misuse." *Taylor*, 2024 WL 3425751, at *2 (cleaned up).

Accordingly, the Court rejects Defendants' argument that Plaintiffs' claims should be dismissed because the FAC is devoid of any allegations that Plaintiffs suffered any adverse employment action or other consequences as a result of Defendants' inquiry about their genetic information. Contrary to Defendants' view, a request for such information *does* give rise to an actionable claim under GIPA Section 25(c)(1) *without* a corresponding misuse by an employer.

The Court now addresses Defendants' alternative argument regarding Plaintiff Jett.

## II. Jett Fails to Plead an Actionable GIPA Claim Against Tyson Fresh Meats

Defendants, noting that Section 25(c)(1) prohibits an employer from soliciting or requesting genetic information "as a condition of employment," argue that Jett's claim should be dismissed, given that he refused to disclose the alleged requested genetic information (twice) and was nevertheless hired (twice), which indicates that Tyson Fresh Meats did not discriminate against Jett because of his refusals. Memo. Dismiss at 7–9. Put differently, Defendants claim, the alleged requests "for Jett's family medical history could not have been a *condition* (i.e., a prerequisite) of Jett's employment . . . .'" Reply at 4 (emphasis in original).

Plaintiffs, in response, assert that the "request" alone "is the unlawful act and any subsequent response by the plaintiff is irrelevant to the claim," reasoning that

federal courts regularly hold employers liable under GINA even when the defendant never obtained the plaintiff's protected genetic information. Resp. at 9–10 (citing *Grisham*, 191 F. Supp. 3d 994; *Tedrow v. Franklin Township Community Sch. Corp.*, 2022 WL 784064 (S.D. Ind. Mar. 14, 2022); *EEOC v. Dolgencorp, LLC*, 2022 WL 2959569 (N.D. Ala. July 26, 2022); and *Jackson v. Regal Beloit Am., Inc.*, 2018 WL 3078760 (E.D. Ky. June 21, 2018). Here, the Defendants have the better of the argument.

As an initial matter, on this point GINA is not instructive, as the comparable provision concerning unlawful requests, 42 U.S.C. § 2000ff-1(b), does not contain analogous language qualifying requests for genetic information "as a condition of employment." *Compare* 42 U.S.C. § 2000ff-1(b), *with* 410 ILCS 513/25(c)(1). Thus, the Court need not analyze further the authority cited by Plaintiffs at Resp. at 9–10, which rely on GINA, as there is a clear material distinction between the statute at issue in those cases and Section 25(c)(1) at issue here.

Section 25(c)(1), as previously noted, states that "[a]n employer . . . shall not directly or indirectly do any of the following: (1) solicit, request, require or purchase genetic testing or genetic information . . . *as a condition of employment* . . . ." 410 ILCS 513/25(c)(1) (emphasis added). The pertinent language of Section 25(c)(1) makes it clear that its prohibitions apply only if an employer's request of genetic information "as a condition of employment." *Id.* In other words, as Defendants posit, Section 25(c)(1) does not encompass allegations (e.g., Tyson Fresh Meats hired Jett on two separate occasions even though he refused to disclose his genetic information)

unmoored from a condition of employment. *See* Black's Law Dictionary (12th ed. 2024) (defining "condition of employment" as "a qualification or circumstance required for obtaining or keeping a job").

In short, Plaintiffs' interpretation of Section 25(c)(1) would omit the phrase "as a condition of employment," which the Court may not do. As the Seventh Circuit instructs, "statutory interpretation requires reading a text as a whole[.]" *Kleber v. CareFusion Corp.*, 914 F.3d 480, 483 (7th Cir. 2019). "In interpreting a statute, no part should be rendered meaningless[.]" *Skaperdas v. Country Cas. Ins. Co.*, 28 N.E.3d 747, 751 (Ill. 2015). Accordingly, Jett's claims against Tyson Fresh Meats and Tyson Foods are dismissed.

Having addressed Defendants' Fed. R. Civ. P. 12(b)(6) arguments, and dismissing Jett's claims for the reasons stated above, the Court now turns to Defendants' remaining contention that Bailey lacks standing to bring her claim against Tyson Foods.

## III. Bailey's Claim Against Tyson Foods is Dismissed Under Fed. R. Civ. P. 12(b)(1) Without Prejudice

Finally, Defendants argue that Bailey lacks standing to bring her GIPA claim against Tyson Foods. That is, Defendants maintain that to the extent Bailey has a viable GIPA claim, which the Court finds that she does, her claim is appropriately directed at AdvancePierre, as (1) she does not allege that she was employed by Tyson Foods, which is a prerequisite to bring a claim under Section 25, and (2) the allegations that Tyson Foods directed the pre-employment physical exam process are not enough to state a viable claim under GIPA. Memo. Dismiss at 13–14. Not so,

Bailey responds, arguing that (1) Defendants waived any arguments concerning standing when they removed this action to federal court, and (2) Tyson Foods is liable for AdvancePierre's misconduct under the Seventh Circuit's direct participant liability doctrine. Resp. at 12–15.

Defendants, in reply, argue that (1) "[g]iven the material differences between the allegations in Plaintiffs' original Complaint and their FAC," and their invocation of the Court's subject matter jurisdiction, "Tyson Foods did not waive its right to challenge the issue of standing by removing the *original Complaint*," and (2) as for the direct participant doctrine, Bailey's allegations "fall[] well short of triggering the direct participant doctrine[,]" as "[Bailey's] assertions describe nothing more than a textbook parent-subsidiary relationship." Reply at 8–9 (emphasis in original). The Court agrees with the Defendants.

Article III of the Constitution limits the jurisdiction of the federal courts to "cases" and "controversies." U.S. CONST. art. III, § 2. "The case-or-controversy requirement ensures that the judiciary 'confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved.'" *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 937 (7th Cir. 2022) (quoting *Genesis Healthcorp. v. Symczyk*, 569 U.S. 66, 71 (2013)).

Article III standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

"There are two forms of standing challenges," facial and factual. *In re Recalled Abbott Infant Formula Prod. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024) (cleaned up). "A facial challenge attacks standing on the pleadings, arguing that the plaintiff lacks standing even if the well-pleaded allegations in the complaint are taken as true." *Flynn v. FCA U.S. LLC*, 39 F. 4th 946, 952 (7th Cir. 2022). A factual challenge, by contrast, asserts that there is in fact no standing." *Id.* "Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Apex Digital*, 572 F.3d at 443. Factual challenges, on the other hand, allow district courts to look beyond the allegations and consider evidence that has been submitted on the issue. *Id.* at 444. Here, Defendants launch a facial challenge.

In her FAC, Bailey alleges that she was an employee of AdvancePierre, not Tyson Foods. FAC, ¶¶ 52, 54. Bailey concedes that the plain language of Section 25(c)(1) indicates that its prohibitions apply to "employers." *See generally* Resp. Bailey, however, argues that she has Article III standing in two ways: (1) Defendants conceded subject matter jurisdiction by removing the case to this Court; and (2) the direct participant doctrine extends liability from AdvancePierre to Tyson Foods.

Starting with Bailey's first argument, while it is true that Defendants represented in their Notice of Removal that "this Court has original jurisdiction over Plaintiffs' claims under" the Class Action Fairness Act and diversity jurisdiction (*see*

R. 1, ¶¶ 7, 11), the FAC that Plaintiffs filed nearly three months after the original Complaint was removed to this Court is materially different than the original Complaint. *See* Reply at 7.

At the time of removal in March 2023, the original Complaint only named removing-Defendant Tyson Foods, alleging that Bailey was employed by Tyson Foods, and that Tyson Foods inquired directly about her family medical history in violation of GIPA. *See generally* R. 1, Exh. A, Compl. The FAC, on the other hand, adds AdvancePierre as a Defendant and alleges that AdvancePierre employed Bailey, not Tyson Foods. FAC ¶ 10. The FAC also newly alleges that AdvancePierre and Tyson Fresh Meats are wholly owned subsidiaries of Tyson Foods, and that Tyson Foods' employees or agents were responsible for the pre-employment physical exam policies. *Id.* ¶¶13–14, 60, 84.

Thus, considering the material differences between the original Complaint and the FAC, the Court agrees with the Defendants, and finds that they did not waive the issue of standing by removing the original Complaint to this Court, as "[w]hen courts analyze standing, 'allegations matter.'" *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) (quoting *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1246, 1248 (7th Cir. 2021)). And "[w]hat matters here, then is what [Bailey] alleged in her operative complaint." *Id.*; *see also Ticketreserve, Inc. v. viagogo, Inc.*, 656 F. Supp. 2d 775, 779 (N.D. Ill. 2009) ("Once an amended complaint is filed it supersedes the original complaint and controls the case from that point forward."). Here, the

allegations in the original Complaint, operative at the time of removal, support that AdvancePierre was not even a named party.

The Court now addresses whether Bailey has standing against Tyson Foods under the direct participant doctrine.

The direct participant liability theory of recovery was first recognized by the Illinois Supreme Court in *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227 (Ill. 2007). There, the plaintiffs brought wrongful-death actions against the defendant (Clark USA). *Id*. at 230. The decedents, who were employees (mechanics) of a wholly owned subsidiary (Clark Refining) of the defendant, died in a fire at a refinery. *Id*.

The fire allegedly occurred when other employees of the defendant's subsidiary attempted to replace a valve on a pipe without ensuring that flammable materials within the pipe had been depressurized. *Forsythe*, 864 N.E.2d at 231. The plaintiffs alleged that the employees who attempted to replace the valves were not qualified to do so. *Id*. The plaintiffs further alleged that, as part of its overall budgetary strategy, the defendant required its subsidiary to engage in cost-cutting measures that prevented the subsidiary from properly training its employees and keeping the premises in a safe condition. *Id*.

The defendant argued that it was merely a holding company and owed no duty to the employees of its subsidiary, a contention accepted by the trial court. *Forsythe*, 864 N.E.2d at 231. The appellate court reversed the trial court's grant of summary judgment in favor of the defendant, and the Illinois Supreme Court, affirmed the

reversal, and for the first time, held that the defendant-parent corporation could potentially be held liable under a theory of direct participant liability. *Id.* at 242.

Initially noting the general rule that parent corporations are not liable for the acts of their subsidiaries, the Illinois Supreme Court held that "[w]here there is evidence sufficient to prove that a parent company mandated an overall business and budgetary strategy *and* carried that strategy out by its own specific direction or authorization, surpassing the control exercised as a normal incident of ownership in disregard for the interests of the subsidiary, that parent company could face liability." *Forsythe*, 864 N.E.2d at 238 (emphasis in original). However, the court explained that acts of interference that are merely incident to the parent's ownership of the subsidiary do not give rise to liability. *Id.*

As such, "the acts of direct operation that give rise to parental liability must necessarily be distinguished from the interference that stems from the normal relationship between parent and subsidiary[.]" *Forsythe*, 864 N.E.2d at 234 (quoting *U.S. v. Bestfoods*, 524 U.S. 51, 71–72 (1998)). A key consideration then, under the direct participant doctrine, is "whether, in degree and detail, actions directed to the facility by an agent of the parent alone are eccentric under accepted norms of parental oversight of a subsidiary's facility." *Id.*; *see also United States v. All Meat & Poultry Prod. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 833 (N.D. Ill. 2007) (direct participant doctrine applies only if the underlying "wrong can be traced to the parent through the conduit of its own personnel and management and the parent exerted

control over the subsidiary in a way that surpasses the control exercised as an incident of ownership") (cleaned up).

Here, Bailey hinges her direct liability doctrine theory on "information and belief"[6] that an employee of Tyson Foods instructed AdvancePierre to request her genetic information, and identical forms, and similar procedures used during the pre-employment physical exams between AdvancePierre and Tyson Fresh Meats. Resp. at 15. But as Defendants correctly note, these assertions describe a "textbook parent-subsidiary relationship[,] which falls well short of triggering the direct participant doctrine." Reply at 9 (citing *Bestfoods*, 524 U.S. at 72 (parent corporation's "articulation of general policies and procedures" does not give rise to direct participant liability)); *see also Santora v. Starwood Hotel and Resorts Worldwide, Inc.*, 580 F. Supp. 2d 694 (N.D. Ill. 2008) (parent corporation's creation and implementation of operating standards for subsidiaries did not trigger direct participant liability)).

In sum, there must be a causal connection between Bailey's injury and the conduct of which she complains. *Doe v. Holcomb,* 883 F.3d 971, 978 (7th Cir. 2018). That is, Bailey's injury must be "fairly traceable" to Tyson Food's actions. *See id*. Here, the FAC falls short. Accordingly, Bailey's claim against Tyson Foods is

---

[6]"When a plaintiff sets out allegations on information and belief, he is representing that he has a good-faith reason for believing what he is saying, but acknowledging that his allegations are based on secondhand information that [he] believes to be true." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011).

dismissed under Fed. R. Civ. P. 12(b)(1) without prejudice with leave to amend consistent with this Order.

## Conclusion

For the foregoing reasons, (1) Bailey's claim asserted against AdvancePierre may proceed, (2) Jett's claims asserted against Tyson Fresh Meats and Tyson Foods are dismissed with prejudice, and (3) Bailey's claim asserted against Tyson Foods is dismissed without prejudice with leave to amend consistent with this Order.

Date: 8/15/2024

United States District Judge
Franklin U. Valderrama